***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was duly self insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from November 1, 1965, to the date of the hearing before the deputy commissioner and continuing.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for thirty (30) days within a seven-month period, as set forth by N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff has worked in a number of different areas in Defendant's plant, which include the boiler room, fine paper area, and the preventative maintenance shop. During the course of his employment, he was exposed to asbestos dust from insulation materials that were disturbed by co-workers working on pipes, boilers, and turbines. He also spent several years as a maintenance mechanic where he worked throughout the plant. During this time, he directly repaired boilers, turbines, and other machinery. The removal of the insulation by him and co-workers caused significant amounts of asbestos dust to be released into the environment. Defendant did not provide plaintiff with a respirator or any other form of airway protection to protect him from asbestos exposure.
7. Plaintiff's income during the fifty-two (52) weeks prior to his diagnosis on July 14, 1998, was $55,711.48, which is sufficient to produce the maximum compensation rate for 1998, $532.00. By separate stipulation by counsel for both parties on August 13, 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
8. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the Commission may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the Commission determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. The parties agreed that the only contested issues for determination are:
 A. Does Plaintiff suffer from a compensable occupational disease and/or diseases? If so, what disease and/or asbestos-related diseases?
 B. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
 C. Whether plaintiff shall be entitled to attorney's fees for the unreasonable defense of this matter?
 D. Does N.C. Gen. Statute §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
12. On the issue of additional monetary benefits, plaintiff is entitled to undergo additional panel examinations as required by law. Upon completion of the additional examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before the Commission on this matter.
13. The parties submitted to the Commission the medical records and reports of plaintiff by the following physicians:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University, dated July 14, 1998. It was the opinion of Dr. Darcey, and the Full Commission finds, that plaintiff has a clinical diagnosis of asbestosis and asbestos-related pleural changes based on plaintiff's history of exposure to asbestos with adequate latency to develop asbestosis; an ILO chest x-ray B-read showing pleural changes consistent with asbestos exposure and interstitial changes consistent with asbestosis; and a high resolution CT of the chest showing pleural changes consistent with asbestos exposure and interstitial changes consistent with asbestosis.
 B. A CT scan and chest x-ray report dated October 25, 1997, interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. Overall, it was his opinion, and the Full Commission finds as fact, there are findings that would be consistent with asbestosis given a history of asbestos exposure.
 C. Dr. Phillip Lucas, a NIOSH B-reader and radiologist, reviewed the chest x-ray dated October 25, 1997. Overall, it was his opinion, and the Full Commission finds as fact, that there are bilateral interstitial fibrotic changes consistent with asbestosis in a patient who had an adequate exposure history and latency period.
 D. Dr. Richard C. Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed the chest x-ray dated October 25, 1997. He reported both parenchymal abnormalities consistent with pneumoconiosis in the middle and lower lung zones with a profusion of 2/1.
 E. A B-read report of a chest x-ray dated November 14, 1990, from Eastern Radiologists, Inc., by Dr. Weaver. The B-read report indicates that the radiologist interpreted the x-ray as having parenchymal abnormalities consistent with pneumoconiosis in the lower lung zones with a profusion of 1/0.
 F. An Advisory Medical Evaluation Report written by Dr. Gregory Pape, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on July 29, 1999. Dr. Pape conducted a full physical evaluation, performed pulmonary function tests, and reviewed other medical records including chest x-ray and CT scan reports. His overall impression was that based on plaintiff's symptoms, chest x-ray, CT scan, and slightly decreased diffusing capacity, plaintiff does have mild asbestosis.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from November 1, 1965, to the date of the hearing before the deputy commissioner and continuing.
2. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
3. Plaintiff has worked in a number of different areas in defendant's plant, which include the boiler room, fine paper area, and the preventative maintenance shop. During the course of his employment, he was exposed to asbestos dust from insulation materials that were disturbed by co-workers working on pipes, boilers, and turbines. He also spent several years as a maintenance mechanic where he worked throughout the plant. During this time, he directly repaired boilers, turbines, and other machinery. The removal of the insulation by him and co-workers caused significant amounts of asbestos dust to be released into the environment. Defendant did not provide plaintiff with a respirator or any other forms of protection against asbestos exposure.
4. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1965 to the date of the hearing before the Deputy Commissioner.
5. The medical report of Dr. Darcey from Duke University Medical Center, who physically examined plaintiff, concluded, and the Full Commission finds as fact, that he has asbestosis.
6. The chest film reports and/or deposition testimony of Drs. Lucas, Bernstein, Dula, and Weaver, who all interpreted the chest film of plaintiff, concluded, and the Full Commission finds as fact, that there were radiographic changes consistent with asbestosis.
7. The advisory medical report of Dr. Pape concluded, and the Full Commission finds as fact, that plaintiff has mild asbestosis.
8. Defendant failed to produce any conflicting medical evidence to refute the findings that plaintiff developed asbestosis as a result of his exposure to asbestosis while working for defendant.
9. Plaintiff has proven by the greater weight of the evidence that he has developed asbestosis, an occupational disease, as a result of exposure to asbestos while working for defendant, and that his employment placed him at an increased risk of developing asbestosis as compared to members of the general public. Further, he also suffers from asbestos-related pleural disease caused by his exposure to asbestos while working for defendant and his employment placed him at an increased risk of developing asbestosis as compared to members of the general public.
10. Plaintiff was last injuriously exposed to asbestos while in the employment of defendant and developed these diseases as a result of his many years of asbestos exposure while employed by defendant.
11. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
12. Plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00. Deputy Commissioner Glenn ordered plaintiff removed from further exposure to asbestosis by his Opinion and Award filed November 21, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. The legislative intent of Sections 97-61.1 through 97-61.7 of the North Carolina General Statutes is to promote workplace safety by encouraging employees to remove themselves from further injurious exposures. Removal from further exposure to the hazards of asbestos can be accomplished by removal from the hazard as opposed to removal from the employment. Austin v. General Tire, 141 N.C. App. 397, 540 S.E.2d 824
(2000), rev'd on other grounds, 354 N.C. 344, 553 S.E.2d 680 (2001);Roberts v. Southeastern Magesia and Asbestos Co., 61 N.C. App. 706,301 S.E.2d 742 (1983); N.C.G.S. § 97-53(28)(i);29 C.F.R. § 1910.134.
6. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, when plaintiff was first ordered removed. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of the order of removal at the weekly benefit rate of $588.00. N.C. Gen. Stat. § 97-61.5; Roberts v. SoutheasternMagnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983).
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
8. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
9. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
10. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. § 97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos-related pleural disease while employed by defendant and as a consequence of the Industrial Commission's Order of Removal, at a weekly rate of $588.00, commencing on July 14, 1998. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, March 23, 2000, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 16th day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER